**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CIVIL ACTION** |
| *ex rel.* **ALYSSA ROSE** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SELECT REHABILITATION, LLC** | : | **NO. 17-5434** |

**<u>MEMORANDUM OPINION</u>**

Savage, J.                                                            April 6, 2023

Alyssa Rose, as relator, brought this *qui tam* action against defendant Select Rehabilitation, LLC ("Select") under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729(a)(1)(A), (B), alleging that it submitted false claims to Medicare and Medicaid. She accused Select of billing Medicare and Medicaid for unnecessary occupational and physical therapies to patients who did not need them, could not participate in them, or would not benefit from them. She also claimed Select retaliated against her by firing her in violation of 31 U.S.C. § 3730(h)(1).

On July 5, 2022, after years of investigating the claim, the Government declined to intervene. With the Government's consent, Rose voluntarily dismissed the two substantive FCA claims, leaving only the retaliation claim.

Moving to dismiss the remaining claim under Federal Rules of Civil Procedure 12(b)(6), Select contends that Rose did not engage in conduct that would have put it on notice of a potential FCA claim and her termination was unrelated to protected conduct.

Accepting the facts in the Complaint as true and drawing all reasonable inferences from them in favor of Rose, we conclude she has alleged facts that, if proven, support her claim that she engaged in protected conduct and was fired for it. Rose complained to her

supervisors that Select was providing unnecessary therapy services.  Her complaints, as alleged, put Select on notice that she was investigating a potential FCA claim.  Aware that she was questioning conduct that could lead to an FCA action, Select terminated her. Therefore, because Rose has alleged facts that state a plausible claim of retaliation, we shall deny Select's motion.

### Relator's Allegations

Select contracts with skilled nursing facilities and nursing homes to provide rehabilitation services.[1]  One of those facilities is Harrison House Christiana in Christiana, Pennsylvania.[2]  All Harrison House residents are Medicare patients, and most are eligible for both Medicare and Medicaid.  Medicaid pays the Medicare co-pay for therapy services.

At Harrison House, a care plan for each patient is created by Kelly Burton or Kourtney Randsdorp, Select employees.[3]   Burton, a licensed physical therapist and Director of Rehabilitation Services at Harrison House, supervises all physical therapy, occupational therapy, and speech therapy services.[4]  Randsdorp, a licensed occupational therapist, oversees all occupational therapy services.[5]  Patient therapy services are provided by Certified Occupational Therapy Assistants ("COTAs") or by Certified Physical Therapy Assistants ("CPTAs").[6]

---

[1] Civil Compl. Pursuant to the False Claims Act, 31 U.S.C. § 3729 et seq. ¶ 5, ECF No. 112 ["Compl."].

[2] *Id.* ¶¶ 3, 15.

[3] *Id.* ¶ 22

[4] *Id.* ¶¶ 12–13.

[5] *Id.* ¶ 14.

[6] *Id.* ¶ 22.

Rose, a certified occupational therapy assistant licensed in the Commonwealth of Pennsylvania,[7] worked for Select from October 2015 to October 2017.[8]  Rose began working for Select as needed at the Ware Presbyterian nursing home.[9]  In April 2016, she was assigned full time at Harrison House where she worked until she was terminated on October 12, 2017.[10]

Rose alleges that Randsdorp and Burton, in concert with Select Regional Manager Marissa Thomas, would order occupational and physical therapy for patients who had no need for it or for the amount provided because they were unable to perform the number of prescribed minutes, did not need the number of weeks prescribed, and were repeatedly placed on, off, then back on therapy.[11]  In her complaint, Rose alleges in detail thirteen patient examples of unnecessary or futile therapy services.  Because Rose is not proceeding with her substantive claims, we need not recite them here.  Suffice to say, the facts alleged in those examples, if proven, present a compelling case of unnecessary treatment.

Rose and her coworkers complained to Randsdorp and Burton that patients were receiving unnecessary therapy services.[12]  Rose wrote in the electronic medical record of Patient W.S. that he should be discharged from occupational therapy.[13]  Select's

---

[7] *Id.* ¶ 1.

[8] *Id.* ¶ 2.

[9] *Id.*

[10] *Id.* ¶¶ 3–4, 51.

[11] *Id.* ¶ 46.

[12] *Id.* ¶¶ 107, 109.

[13] *Id.* ¶ 110.

Compliance Office contacted her, instructing her to cross out the note.[14]  She refused,[15] explaining that "to do so would be a 'criminal offense.'"[16]

After Rose refused to change the record, Mary Pidch of Select's Compliance Office instructed her to contact only the Compliance Office with billing questions and not to discuss the matter outside of Select.[17]  Pidch added that the notes in question were being deleted and the service would not be billed.[18]  Rose learned that her occupational therapy notes about her references to patient discharge had been crossed out.[19]

On October 12, 2017, Select's Regional Vice President Ed Lubarski and a woman from Select's corporate office met with Rose.[20]  They accused her of inappropriate charting.[21]  Rose was terminated.[22]

## Standard of Review

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

---

[14] *Id.* ¶ 111.

[15] *Id.* ¶ 112.

[16] *Id.*

[17] *Id.* ¶ 113.

[18] *Id.*

[19] *Id.* ¶ 114.

[20] *Id.* ¶ 115.

[21] *Id.* ¶¶ 116.

[22] *Id.* ¶¶ 115–16.

A conclusory recitation of the elements of a cause of action is not sufficient. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The plaintiff must allege facts necessary to make out each element. *Id.* (quoting *Twombly*, 550 U.S. at 563 n.8). In other words, the complaint must contain facts which support a conclusion that a cause of action can be established.

All well-pleaded allegations in the complaint are accepted as true and interpreted in the light most favorable to the plaintiff, and all inferences are drawn in the plaintiff's favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)).

## Analysis

To encourage individuals to expose fraud, the FCA protects employees who participate in investigating and prosecuting FCA violations from retaliation. *Hutchins v. Wilentz*, 253 F.3d 176, 185–86 (3d Cir. 2001) (citations omitted). Section 3730(h)(1) of the FCA provides:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1).

To establish that she was retaliated against because of conduct done in furtherance of an FCA claim, Rose must show that: (1) Select knew she engaged in the protected conduct; and (2) its retaliation was motivated, at least in part, by her engaging

in that protected conduct.  *Hutchins*, 253 F.3d at 186 (citing *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 736 (D.C. Cir. 1998)).

We must first determine whether Rose has sufficiently alleged that she had engaged in protected conduct.  Select argues she alleges conduct that was nothing more than complaining about unnecessary therapy, not about false or fraudulent billing. Further, it contends she did not link her complaints to any *qui tam* action it could have anticipated.

Protected conduct is action taken in furtherance of an FCA action.  *Id.* at 186.  It "includes 'investigation for, initiating of, testimony for, or assistance in" a False Claims Act suit,' which 'can include internal reporting and investigation of an employer's false or fraudulent claims.'"  *Id.* at 187 (internal citations omitted).  There is a difference between investigations of noncompliance and investigations of fraud.   "[A]n employee's investigation of nothing more than his employer's non-compliance with federal or state regulations" does not constitute protected conduct.  *Id.* at 187–88 (quoting *Yesudian*, 153 F.3d at 740).

The employee need not develop a winning *qui tam* action or file one to succeed. *Id.* at 188.  It is enough that she was investigating and her investigation was "calculated, or reasonably could lead to" an FCA claim.  *Id.* at 187.  It is a fact specific inquiry.  *Id.*

Knowledge requires that the employer was "on notice of the 'distinct possibility' of FCA litigation."  *Id.* at 188.  This inquiry asks:

> whether the employee engaged in conduct from which a fact finder could reasonably conclude that the employer could have feared that the employee was contemplating filing a qui-tam action against it or reporting the employer to the government for fraud. . . . [L]itigation . . . [is] a "distinct possibility" only if the evidence reasonably supports such fear;

> if the evidence does not support this fear, litigation would not
> have been a distinct possibility.

*Id.* (internal citation omitted).

Rose alleges that she engaged in two activities constituting protected conduct that put Select on notice that she was investigating a potential FCA claim.  First, she complained to Randsdorp and Burton that patients were receiving unnecessary therapy services.  Second, she recorded in Patient W.S.'s electronic medical record that he should be discharged from occupational therapy in an effort to stop an FCA violation.  When Pidch, Select's Compliance Officer, instructed her to cross out the note, Rose informed her that to do so would be a "criminal offense."[23]

According to Select, Rose's complaints to her direct supervisors were about unnecessary therapies, not about false or fraudulent claims for payment submitted to Medicare or Medicaid.  Select adds that Rose's refusal to cross out her discharge note lacks a nexus to the FCA because Pidch told Rose that Select it did not bill for the therapy service.

Drawing all inferences in Rose's favor, we find that her conduct had a sufficient nexus to the FCA.  Her complaints about unnecessary therapy treatments logically extend to overbilling.  It is reasonable to infer that she believed Select was providing unnecessary treatments for the purposes of billing Medicare and Medicaid for them.  At that point, one could reasonably conclude that Select perceived that she was investigating a possible false claim.  Indeed, it is telling that Pidch instructed her not to talk about *billing* questions with anyone outside of Select.

---

[23] Compl. ¶ 112.

Select also argues that Rose did not refer to Select's providing unnecessary therapy as "illegal" or "unlawful," giving it notice of a potential FCA claim.  Although those terms would certainly alert Select that Rose was contemplating an FCA action, they are not necessary.  Questioning the practice that obviously leads to billing for unnecessary therapies could be interpreted as a step toward building an FCA case.  At this stage, Rose has alleged enough to show she engaged in protected conduct.

Select contends that, as an occupational therapy assistant, Rose cannot legally make patient discharge decisions.  This argument is irrelevant.  The complaint describes thirteen patients with severe medical conditions who clearly would not have benefitted from the intense therapeutic services Select provided.  Assuming the facts are true, one can easily conclude that the therapy services were unnecessary.  In these cases, Rose was not making discharge decisions, but rather noting her observations which can be seen as creating a record for an FCA claim.

We now turn to whether Rose sufficiently alleged that Select retaliated against her for complaining about unnecessary therapy services by terminating her employment.  Select contends she has not.  It argues that it had no knowledge of Rose's protected conduct.  Pidch was concerned about Rose's raising billing questions.  As we noted, a reasonable inference is that Select presumed from Rose's complaints that she was investigating an FCA claim.

Select argues that Rose does not allege sufficient temporal proximity to infer she was terminated for protected conduct.  Select terminated Rose on October 12, 2017.  Rose did not specifically plead when any of her protected conduct occurred.  Select claims

that it was the date she wrote on Patient W.S.'s chart that he should be discharged.[24] That date is August 25, 2017, seven weeks before her termination. We do not know when Select discovered the note.

According to Select, seven weeks is not so unduly suggestive to raise an inference of termination based on protected conduct. We disagree. Select could have decided to terminate Rose earlier but waited to avoid the appearance of a link to the protected conduct. Whether there was a link is a factual determination we decline to make at the motion to dismiss stage. She met with Pidch sometime after that date. Thus, she was terminated sometime less than seven weeks after the W.S. note was made.

Accepting the alleged facts as true and drawing all reasonable inferences from them, we conclude Rose has stated a plausible retaliation claim. As pleaded, her complaints to her supervisors and her refusal to alter the medical record constitute protected conduct that put Select on notice that she was investigating a potential FCA claim. Motivated by fear of litigation, Select terminated her to avoid detection. Therefore, we shall deny Select's motion to dismiss.

---

[24] Occupational Therapy Treatment Encounter Note for Patient W.S. (Aug. 25, 2017), ECF No. 54-2 (attached as Ex. A to Select Rehabilitation LLC's Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 54) ("97530: time spent writing up pts d/c 2* pt plateauing.pt educated on importance of therapy and participating in self care.time spent instructing nursing on RNP to max carryover of ot gains.")